UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH DUEHRING,

       Plaintiff,                                         Civil Action No. 14-CV-11275

vs.                                                    HON. MARK A. GOLDSMITH

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**OPINION AND ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 10), (2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 14), and (3) REMANDING TO THE COMMISSIONER FOR FURTHER PROCEEDINGS**

**I. INTRODUCTION**

In this social security case, Plaintiff Kenneth Duehring, proceeding pro se, appeals from the final determination of the Commissioner of Social Security, denying his applications for disability insurance benefits and supplemental security income under the Social Security Act. A hearing on Plaintiff's applications was held before Administrative Law Judge ("ALJ") Kevin W. Fallis on August 17, 2012. Administrative Record ("A.R.") at 38 (Dkt. 7). On September 26, 2012, the ALJ issued a decision declaring Plaintiff not disabled from June 14, 2011, the alleged onset of Plaintiff's disability, through the date of the decision. Id. at 22, 31. Plaintiff requested review of this decision, id. at 17, and the Appeals Council denied the request, id. at 1. At that point, the ALJ's decision became the final decision of the Commissioner. Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 543-544 (6th Cir. 2004). Plaintiff then filed a complaint in this Court to contest the ALJ's decision (Dkt. 1). The parties have filed cross-motions for summary judgment (Dkts. 10, 14). As discussed in more detail below, the Court now grants Plaintiff's motion for

1

summary judgment and denies Defendant's motion for summary judgment on the grounds that the ALJ failed to adequately explain the basis for his credibility determination, and remands the case for further proceedings. Because the Court orders remand on the basis of Plaintiff's original motion and pursuant to sentence four of 42 U.S.C. § 405(g), the Court need not address the relevance of Plaintiff's supplemental materials.

## II. PROCEDURAL HISTORY

The Court pauses briefly to address the procedural history underlying this social security appeal. Plaintiff's former counsel terminated its representation of Plaintiff in this appeal, and Plaintiff was informed of this fact through a letter from the firm and multiple notices from the Court. Plaintiff was given a window of opportunity in which to secure new counsel, and no new counsel appeared on his behalf. Subsequently, the Court ordered Plaintiff to appear for an in-person status conference to discuss how to proceed with his appeal. Plaintiff, with prior permission from the Court, participated telephonically, along with two lawyers appearing on behalf of the Commissioner (one of whom also participated telephonically, also with the Court's permission). Plaintiff understood that he was deemed to be representing himself. And while the Court explained to Plaintiff that the quality of performance by his former counsel had been called into question, Plaintiff stated that he wanted to proceed on the briefing as it currently stands. The Court allowed Plaintiff to submit additional information he wished the Court to consider as well as afforded the Commissioner an opportunity to respond. Plaintiff timely submitted supplemental material, see Suppl. A.R. (Dkt. 21), and the Commissioner submitted a response (Dkt. 22).

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court's "review is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper

legal standards.'" Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010) (quoting Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In determining whether substantial evidence exists, the Court "may look to any evidence in the record, regardless of whether it has been cited by [the ALJ]." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001). "[T]he claimant bears the burden of producing sufficient evidence to show the existence of a disability." Watters v. Comm'r of Soc. Sec., 530 F. App'x 419, 425 (6th Cir. 2013).

"Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether an individual is disabled, the Commissioner applies the following five-step sequential disability analysis: (i) whether the claimant performed substantial gainful activity during the disability period; (ii) whether the claimant has a severe medically determinable impairment; (iii) whether the claimant has an impairment that meets or equals a listed impairment; (iv) whether the claimant, in light of his residual functional capacity ("RFC") can return to his past relevant work; and (v) if not, whether the claimant, in light of his RFC and his age, education, and work experience, can make an adjustment to other work. See 20 C.F.R. § 416.920(a) (explaining the five-step sequential evaluation process). Plaintiff has the burden of proof for the first four steps, but, at step five, the burden shifts to the Commissioner to show that "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national

economy." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).

## IV. THE ALJ'S DECISION

The ALJ based his decision on an application of the Commissioner's five-step sequential disability analysis to Plaintiff's claim. The ALJ found as follows:

- Under Step One, Plaintiff met the insured status requirements through March 31, 2013, and had not engaged in any substantial gainful activity since June 14, 2011, the alleged onset of disability. A.R. at 24.

- Under Step Two, Plaintiff had the following severe impairments: "degenerative disk disease of the cervical and lumbar spine, bilateral carpal tunnel syndrome, osteoarthritis, bilateral knee pain and chest pain." Id.

- Under Step Three, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Id. at 27.

- Plaintiff had the RFC "to perform light work . . . except occasional pushing or pulling; and occasional operation of foot controls. Never climb ladders, ropes or scaffolds. Occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching and crawling. Occasional overhead reaching. Frequent bilateral handling of objects and fingering. Avoid all exposure to excessive vibration; concentrated exposure to hazardous moving machinery and avoid all exposure to unprotected heights." Id. at 28.

- Under Step Four, Plaintiff was capable of performing his past relevant work as a graphic designer and engineering designer. Id. at 29.

- Alternatively, under Step Five, considering Plaintiff's RFC, age, education, and work experience, Plaintiff could also perform unskilled, light positions such as office clerk (4,000 positions in Michigan), receptionist/information clerk (2,200 positions in Michigan), and food prep worker (3,000 positions in Michigan). Id. at 29-30.

## V. ANALYSIS

### A. Plaintiff's Original Motion

As an initial matter, and as Defendant correctly observes, Plaintiff's appeal is one in a long line of social security appeals that suffers from a significant, and often fatal, defect: namely, the employment by Plaintiff's former counsel of a "cut and paste" brief, which is composed

principally of bare legal standards with little-to-no application of those standards to the facts of Plaintiff's case. However, this fact does not preclude the Court from considering those arguments in the brief that are factually supported, even if the supporting analysis is meager, at best.

Plaintiff challenges the ALJ's decision on three grounds: (i) the ALJ improperly assessed Plaintiff's credibility when he discounted Plaintiff's complaints of pain and Plaintiff's testimony regarding the extent of his functional impairments; (ii) the hypothetical presented to the Vocational Expert ("VE") did not accurately describe Plaintiff in all relevant respects, which led to an erroneous determination that Plaintiff could perform his previous work; and (iii) the ALJ did not properly evaluate medical source opinions, and did not give full credence to the "treating physician" rule.

The Court concludes that the ALJ failed to provide sufficient, satisfactory reasons for discounting Plaintiff's testimony. While the ALJ's decision to discredit Plaintiff's testimony regarding the extent of his pain and/or functional limitations may be supported by the record, the ALJ failed to adequately explain his rationale for doing so, hampering the Court's present review. Remand is warranted on this basis alone. Because the ALJ's credibility determination is tied to the hypothetical offered to the VE, the Court declines to address that argument at this time, as it is something the ALJ will need to reconsider on remand. Finally, there does not appear to be a medical source opinion, let alone one from a treating source, in the administrative record; accordingly, this does not appear to be something the ALJ need address on remand.

### 1. Plaintiff's Credibility

As summarized by the Sixth Circuit, the following legal standards govern an ALJ's credibility determination:

5

> It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." Rather, such determinations must find support in the record. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. Consistency of the various pieces of information contained in the record should be scrutinized. Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.
>
> Social Security Ruling 96-7p also requires the ALJ explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.

Rogers, 486 F.3d at 247-248 (citations and footnote omitted). Indeed, it is not "merely helpful for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." Hurst v. Sec'y of Health & Human Servs., 753 F.2d 517, 519 (6th Cir. 1985) (quoting Zblewski v. Schweiker, 732 F.2d 75, 78 (7th Cir. 1984)); see also Bailey v. Comm'r of Soc. Sec., 173 F.3d 428, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999) (Table).

Plaintiff's argument on this point consists of specific references to his testimony regarding his alleged functional limitations, specifically that: (i) he has constant neck pain,

including flare-ups two-to-three times a month; (ii) he can do housework for only 15 to 20 minutes at a time; (iii) he can sit for only 20 minutes, stand for 20 minutes, and can walk only about 600 feet; and (iv) he has difficulty sleeping at night. Pl. Mot. at 10. Plaintiff contends that his testimony is consistent with the objective medical evidence demonstrating his back ailments, and identifies portions of the record which demonstrate the existence of medical abnormalities. Id. at 11. Diagnoses themselves generally do not establish disability, however; rather, it is the functional impairments caused by the diagnosis or condition that render an individual disabled. See Hill v. Comm'r of Soc. Sec., 560 F. App'x 547, 551 (6th Cir. 2014). And a diagnosis of a condition, without more, does not speak to its severity or the functional limitations associated with it. See Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."). In this regard, the ALJ explicitly stated that the objective medical evidence demonstrated medical conditions just mild to moderate in nature. A.R. at 29.

Nonetheless, when, as here, a plaintiff's disability is predicated on subjective complaints of pain, the ALJ is required to go beyond the objective medical evidence in evaluating Plaintiff's claims. Pl. Mot. at 8; see also Felisky v. Bowen, 35 F.3d 1027, 1039 (6th Cir. 1994) (ALJ must look beyond the content of the medical record in evaluating subjective claims of pain). Plaintiff argues that the "reasons given by the ALJ in discounting [Plaintiff's] testimony is [sic] clearly insufficient to substantiate the ALJ's conclusion of his ability to do his past jobs and other jobs." Pl. Mot. at 14. The Court agrees.

The ALJ specifically found that Plaintiff's testimony regarding his functional limitations was not credible. A.R. at 28. But the ALJ's proffered reasons for this conclusion are either without substantial evidence or otherwise fail to show how the ALJ reached his conclusion. See

7

Bailey, 173 F.3d, at *4 ("The ALJ's decision must 'follow an orderly pattern and show clearly how specific evidence leads to a conclusion.'" (quoting Soc. Sec. R. 82-62)).

For instance, it appears that the ALJ did not find Plaintiff credible because "no physician has disabled [Plaintiff] from all work," and "the vocational expert testified [Plaintiff] could perform his past relevant work . . . along with other work." A.R. at 28. However, neither of these reasons provides a basis for discounting Plaintiff's credibility as to the extent of his functional limitations. First, the ultimate disability determination is an issue reserved for the Commissioner; even if a doctor had opined that Plaintiff was disabled, such an opinion would be afforded no deference. See 20 C.F.R. § 404.1527(d). Second, to rely on the VE's testimony regarding Plaintiff's vocational capacity in support of a credibility determination would put the cart before the horse: the VE's testimony was predicated on a hypothetical offered by the ALJ that presumably incorporated the ALJ's credibility determination.

The ALJ's remaining reasons fare no better. The ALJ stated that the evidence showed that Plaintiff was capable of engaging in "essentially typical daily activities," citing, in part, Plaintiff's testimony that he could do household chores for up to 15 minutes at a time. A.R. at 29. However, it would be a stretch to compare these minimal and intermittent activities with "essentially typical daily activities." See Rogers, 486 F.3d at 248 (observing that being able to drive, clean, do laundry, care for two pets, read and watch television, as well as perform stretching exercises "are not comparable to typical work activities"). And the ALJ failed to account for Plaintiff's testimony that he needed to rest for approximately 10 to 15 minutes afterward. A.R. at 42; see also Rogers, 486 F.3d at 248-249 ("[T]he ALJ's description not only mischaracterizes [the plaintiff's] testimony regarding the scope of her daily activities, but also fails to examine the physical effects coextensive with their performance."). Moreover, it is not

8

clear what the ALJ meant when he stated, "[t]he [Plaintiff's] recent and current work activities are consistent with the current residual functional capacity finding." A.R. at 29. To the contrary, Plaintiff's activities (notably, not work activities) at the time of the hearing and as described by Plaintiff appear to be inconsistent with the definition of light work, even as modified by the ALJ.[1]

When evaluating Plaintiff's course of treatment, the ALJ omitted certain information, the inclusion of which would undercut the force of the ALJ's rationale. For example, the ALJ observed that Plaintiff "has not required hospitalization for any physical difficulties, surgical intervention or other aggressive treatments." Id. at 29. Elsewhere, the ALJ noted that Plaintiff's "physical impairments have improved with injections." Id. However, these observations are only partially accurate. First, the medical notes indicate that while steroid injections were effective at relieving Plaintiff's lower leg pain, they did not ameliorate his lower back pain, and a surgical consult may be necessary. Id. at 287. Later notes stated that Plaintiff had not received good symptom relief following three rounds of injections, and a surgical consult was recommended. Id. at 314.

Additional reasons provided by the ALJ for discounting Plaintiff's credibility — that no physician recommended resting or napping to treat Plaintiff's impairments, and that there was no

---

[1] Under the regulations, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967.

evidence of side effects that would preclude full-time employment — do not speak to the source of Plaintiff's alleged disability: his pain. See id. at 29.[2]

Ultimately, the ALJ has failed to offer specific reasons sufficient to make clear to this Court the rationale for discounting Plaintiff's credibility. Other given reasons have misconstrued the evidence of record. And while the administrative record as a whole may support the ALJ's ultimate credibility decision, "[t]his Court 'may not uphold an ALJ's decision . . . if the decision fails to provide an accurate and logical bridge between the evidence and the result.'" Schlicker v. Comm'r of Soc. Sec., No. 10-CV-13697, 2011 WL 5865148, at *8 (E.D. Mich. Nov. 4, 2011) (quoting Pollaccia v. Comm'r of Soc. Sec., No. 09-cv-14438, 2011 WL 281044, at *6 (E.D. Mich. Jan. 6, 2011), report and recommendation adopted by 2011 WL 281037 (E.D. Mich. Jan. 25, 2011)) (collecting cases), report and recommendation adopted by 2011 WL 5865082 (E.D. Mich. Nov. 22, 2011). The Court declines to rewrite the ALJ's opinion so as to make it comport with the evidence presented to the ALJ.

### 2. Plaintiff's Remaining Arguments

In light of the Court's conclusion that the ALJ has failed to sufficiently explain his credibility determination, the Court does not address Plaintiff's argument regarding the accuracy of the hypothetical. "[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible." See Gant v. Comm'r of Soc. Sec., 372 F. App'x 582, 585 (6th Cir. 2010). Because the two issues are dependent upon one another, the Court cannot review the ALJ's hypothetical with any certainty. The ALJ will have an opportunity to readdress the vocational hypothetical upon re-evaluating Plaintiff's credibility.

---

[2] Other aspects of the ALJ's decision lead the Court to question the thoroughness of the reasoning; for instance, the ALJ repeats many of his offered explanations for no apparent reason, and he also appears to conflate objective medical evidence with opinion evidence. See A.R. at 29.

10

As to the portion of Plaintiff's brief concerning the treatment and evaluation of medical source opinions, Plaintiff neither identifies any medical source opinion that the ALJ failed to consider or adopt, nor any actual inconsistency between the RFC and a medical source opinion. Indeed, Plaintiff does not even reference any treating source opinions contained in the record, let alone a treating source opinion that the ALJ failed to consider and/or grant the appropriate weight.  Based on the Court's own review of the record, there does not even appear to be any treating source opinion for the ALJ to evaluate.  Accordingly, this does not appear to be an issue the ALJ need consider on remand.

### B.  Plaintiff's Supplemental Materials

Given the Court's conclusion that the ALJ erred in making his credibility determination, the Court need not address the relevance of Plaintiff's supplemental materials.  As this decision is a final one about the correctness of the prior administrative decision, remand is appropriate pursuant to sentence four of § 405(g).  See Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 174-176 (6th Cir. 1994) (explaining the difference between a sentence-four remand and a sentence-six remand).  Accordingly, the Court need not consider whether Plaintiff's newly submitted evidence meets the criteria for a sentence-six remand.  Id. at 175 ("Under sentence four, the court makes a final judgment, affirming, reversing, or modifying the Secretary's decision and may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place.").

### VI.  CONCLUSION

For the above-stated reasons, Plaintiff's motion for summary judgment (Dkt. 10) is granted, and Defendant's motion for summary judgment (Dkt. 14) is denied.  The Court reverses

the Commissioner's disability decision, and remands the case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion and order.

      SO ORDERED.


Dated: March 7, 2016                      s/Mark A. Goldsmith
Detroit, Michigan                    MARK A. GOLDSMITH
                                        United States District Judge


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 7, 2016.

                                          s/Karri Sandusky
                                          Case Manager